UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**Bradley Pieper,**

      **Plaintiff,**

**v.**

**Disability Management Services, Inc. and Reassure America Life Insurance Company,**

      **Defendants.**

Civil No. 04-2993 (JNE/SRN)

<u>REPORT AND RECOMMENDATION</u>

SUSAN RICHARD NELSON, United States Magistrate Judge

Three motions are pending before the undersigned magistrate judge in the above-captioned action: Defendants' Motion to Dismiss the Complaint with Prejudice (Doc. No. 32), Defendants' Motion to Amend/Correct the Scheduling Order (Doc. Nos. 45, 50), and Plaintiff's Motion for Additional Time to Secure Disability Insurance Attorney (Doc. No. 54). The above motions were taken under advisement on December 19, 2005 without oral argument pursuant to this Court's Order dated October 20, 2005. (<u>See</u> Doc. No. 52.) These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons set forth below, this Court recommends that Defendants' motion to dismiss be granted and that the remaining motions be denied as moot.

**I.      BACKGROUND**

In 1989, as owner and President of Bradley Exterminating, Plaintiff Bradley G. Pieper purchased two long term disability income loss policies from Mutual Benefit Life

Insurance (MBL).[1] (Compl. ¶ 6.) The policies provide for the payment of disability benefits if, due to sickness or injury, the insured cannot engaged in his former occupation or if the insured's monthly earned income falls below a certain level. (Doc. Nos. 35 § 2 and 36 § 1.3.) According to the policies, the insured is not totally disabled unless he is under the care of a licensed physician other than the insured. (Doc. Nos. 35 § 2 and 36 § 1.3.) The policies allow Defendants to require the insured to submit to medical evaluations by physicians selected by the Defendants. (Doc. Nos. 35 § 3 and 37 § 5.3.)

On May 5, 1998, Plaintiff sustained injuries when his head "crashed into a cement wall" after falling down a flight of stairs at Midway Airport in Chicago. (Doc. No. 54 at 1.) Plaintiff claims he filed a claim in 1998 with MBL to collect on his insurance policies.[2] (Id. at 1.) Plaintiff claims that he has suffered several severe injuries from the fall, including mental, nervous, and muscular disorders. (Id. at 1.) As a result of the ongoing effects of these injuries, Plaintiff asserts that he is permanently disabled and unable to carry out his former occupation as an owner of an extermination business. (Compl. ¶ 14.)

On March 14, 2000, Plaintiff was informed that Defendant Reassure America Life Insurance Company (Reassure) had assumed MBL's responsibilities under the subject policies. (Compl. ¶¶ 8, 11.) Defendant Disability Management Services, Inc. is the third

---

[1] Defendants assert that these policies were issued in 1979 and 1990. (Doc. No. 33 at 2.) For purposes of addressing the present motions, the Court adopts Plaintiff's version of events.

[2] Defendants argue that Plaintiff made his claim for total disability benefits in May 2000. For purposes of this motion, the Court adopts Plaintiff's version of the events.

party administrator of the policies retained by Reassure. (Id. ¶ 11.) Defendants claim Plaintiff's medical file shows a lack of contemporaneous treatment with Plaintiff's fall. (Doc. No. 33 at 3.) Thus, Defendants arranged for an independent medical examination of Plaintiff in accordance with the subject insurance polices. (Id.) On February 2, 2001, Defendants wrote to Plaintiff:

> With regard to your medical condition, the clinical evidence necessary to substantiate disability is lacking. To assist us in resolving questions that have been raised with regard to your ongoing functionality and to assist you in providing the necessary proof of loss for consideration of benefits, we requested your participation in an independent medical examination with Dr. Thomas Beniak on January 19, 2001. Dr. Beniak advised us that you chose not to participate in the examination which is required by the provisions contained in your policies.
> . . . .
> Mr. Pieper, please understand that we remain ready and willing to evaluate your claim based on the policy provisions and appropriate test of disability. However, we cannot do so until you participate in the independent testing . . . .

(Doc. No. 38 Ex. C.) Plaintiff claims he did participate in an independent medical evaluation, performed by a Martin Isenberg on October 2, 2000:

> On October 2, 2000, Martin Isenberg, psychologist, flew to Minneapolis from Kansas City to conduct an IME on me at the offices of my psychiatrist Dr. Donald M. Mayberg, the location was chosen by Isenberg and the defendants. There were four people in the office including Dr. Mayberg when Mr. Isenberg explained to us that he was conducting an IME. He then proceeded to examine me for well over two hours and he told me I would be getting a copy of his report. I did not receive a copy [of] that report. So I called Tim O' Connor and asked him for the results. He told me I had problems with Executive Functions, Depression and some other things. I asked [h]im to mail the report to Dr. Mayberg, my attorney or me. He said he'd get back to me. When he called me back, he said Dr. Isenberg had not conducted an IME! He said Dr. Isenberg was only conducting intra company research!

(Doc. No. 54 at 3.)

On May 25, 2004, with the aid of counsel, Plaintiff commenced a lawsuit against

3

Defendants in Minnesota state court alleging that they illegally withheld from Plaintiff benefits due under the subject insurance policies. (Doc. No. 1.) Defendants removed the action to this Court. (Id.) Defendants' Answer contains counterclaims that seek a declaration that Plaintiff was not insured at the time the claim was filed and that he failed to provide proof of his claim. (Doc. No. 12 at 6-8.)

On September 13, 2004, Defendants served interrogatories and document requests on Plaintiff; Plaintiff's responses were due October 17, 2004. (Doc. No. 38 Exs. D-E.) On January 6, 2005, counsel for Plaintiff provided unexecuted responses to Defendants' discovery requests. (Id. Ex. F.) Defendants' interrogatories stated in part: "Identify the occupation, including the duties of such occupation, from which you claim you are disabled." (Id. Ex. H at Interrog. 6.) Plaintiff responded, "Chief Executive Officer and President of Bradley Exterminating." (Id.) Defendants' attempts to get more complete and executed responses from Plaintiff did not succeed. On April 7, 2005, Plaintiff's attorney moved to withdraw as counsel citing his client's non-cooperation and conduct detrimental to the case. (Doc. No. 17.) Plaintiff now contends that his "attorney got upset when he heard" that Plaintiff had contacted the owner of a disability consulting company and that "she was going to help him and me." (Doc. No. 54 at 4.) On April 26, 2005, after a hearing on the matter, Magistrate Judge Jonathan Lebedoff found that good cause existed for withdrawal and granted the motion. (Doc. No. 20). Magistrate Judge Lebedoff instructed, "Plaintiff . . . has until June 6, 2005 to secure alternate counsel or advise the Court in writing that he intends to proceed pro se." (Id. at 2.) Magistrate Judge Lebedoff also scheduled a status conference and cautioned, "If Plaintiff or his counsel does not appear at the status conference, and if the facts support

it, Defendants may bring a motion to dismiss for failure to prosecute." (Id. at 3.)

On April 27, 2005, Defendants filed a motion to compel discovery, which the Court heard in conjunction with the status conference. (Doc. No. 29.) Defendants sought an order compelling Plaintiff to provide:

> complete responses to the following categories of requests: (1) documents reflecting the financial details of the occupation from which Plaintiff claims he is disabled, (2) duties of the occupation from which Plaintiff claims he is disabled, (3) relevant witnesses, (4) the scope of any professional licensures, (5) other insurance policies held or applied for by Plaintiff, and (6) the legal basis for certain of Plaintiff's claims.

(Doc. No. 26 at 4.) On June 20, 2005, Magistrate Judge Lebedoff granted the motion and set August 5, 2005 as the deadline to fully answer the discovery sought by Defendants. (Doc. No. 30.)

When Plaintiff failed to meet the deadline, Defendants moved, on August 24, 2005, to dismiss the Complaint with prejudice for failure to prosecute and for failure to obey Judge Lebedoff's June 20, 2005 Order. (Doc. No. 32.) Defendants claim that Plaintiff's failure to provide basic discovery information has significantly prejudiced their ability to conduct Plaintiff's deposition, other non-party depositions, collection of third-party documents, an independent medical examination, and expert disclosures. (Doc. No. 33 at 7.) Defendants cite, in support of their motion to dismiss, numerous other cases in which Plaintiff failed to cooperate with his counsel, failed to appear for court hearings, and disobeyed court orders. (Id. at 6-7.) Due to a reassignment of judges, a hearing on the motion was delayed and then finally set for oral argument on October 28, 2005 before the undersigned. (Doc. No. 45.) Prior to the hearing date, Plaintiff orally requested that this Court extend the deadline set by the local rules of this Court for filing

his responsive memorandum to allow him to retain counsel. (Doc. No. 52 at 1.) Based upon Plaintiff's representations, the Court granted Plaintiff's request, cancelled the October 28, 2005 motion hearing, ordered Plaintiff to file a responsive memorandum by November 23, 2005, and instructed the parties that the matter would be taken under advisement without oral argument following the submission of Defendants' reply memorandum. (Doc. No. 52 at 2.) Plaintiff did not retain counsel but did file a four-page responsive memorandum on November 23, 2005 in which he also moved for an additional two month extension to "get an experienced lawyer on board." (Doc. No. 54.) After Defendants filed their reply brief, the Court took the matter under advisement and now issues this Report and Recommendation on Defendants' motion to dismiss and the remainder of the motions pending in this action.

## II. DISCUSSION

Federal Rule of Civil Procedure 41(b) provides:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication on the merits.

"Despite the breadth of this language, however, . . . dismissal with prejudice is an extreme sanction that should be used only in cases of willful disobedience of a court order or where a litigant exhibits a pattern of intentional delay." Hunt v. City of Minneapolis, 203 F.3d 524, 527 (8th Cir. 2000). But "willful" does not mean a plaintiff necessarily acted in bad faith, only that the plaintiff "acted intentionally as opposed to

accidentally or involuntarily." Id. "An action may be dismissed pursuant to Rule 41(b) if a plaintiff has failed to comply with any order of the court." Aziz v. White, 34 F.3d 587, 589 (8th Cir. 1994) (affirming a dismissal with prejudice where plaintiff willfully disregarded court's order allowing defendants to depose him), cert denied, 513 U.S. 1090 (1995).

When deciding whether to dismiss a complaint for failure to prosecute, a court considers several factors: (1) whether less severe sanctions are futile; (2) the need to advance its docket and limit prejudice to the defendant weighed against irrevocably extinguishing the plaintiff's claim; and (3) whether the litigant has been warned, although such warning is not required. Hunt, 203 F.3d at 527. A district court's decision to dismiss a case with prejudice will only be reversed for abuse of discretion. Doe v. Cassel, 403 F.3d 986, 990 (8th Cir. 2005) (per curiam). "In determining whether the district court abused its discretion," the Eighth Circuit uses a balancing test that focuses on "'the degree of egregious conduct which prompted the order of dismissal and to a lesser extent upon the adverse impact of such conduct upon both the defendant and the administration of justice in the district court.'" Cassel, 403 F.3d at 990 (citation omitted).

In the instant case, Plaintiff's discovery responses were due on October 17, 2004 (Doc. No. 38 Exs. D-E), and he was under a court order to produce the documents no later than August 5, 2005 (Doc. No. 30). Yet, Plaintiff has not responded. Upon application to this Court, Plaintiff was given additional time to secure an attorney based upon his representations that he was actively seeking counsel. But no counsel has appeared on his behalf. Further, this Court gave Plaintiff additional time to file a brief responding to Defendants' motion to dismiss this action with prejudice. While Plaintiff

did file a brief, the brief does not address why he failed to provide the required discovery responses or provide a timetable outlining when these responses would be provided. Instead, Plaintiff argues, "No where in this policy does it say that an injured person needs to be subjected to a myriad of unscrupulous persons hounding and harassing him . . . ." (Doc. No. 54 at 3.)  Moreover, Plaintiff fails to explain why he has not prosecuted this action or why he has been unable to retain counsel since April 26, 2005, when Magistrate Judge Lebedoff allowed his counsel to withdraw from representing him.  In fact, Plaintiff now again seeks an additional two months to retain an attorney to represent him.  (Doc. No. 54 at 4.)

Inability to retain counsel does not excuse the failure to comply with a court order. See Schooley v. Kennedy, 712 F.2d 372, 373 (8th Cir. 1983) (per curiam) ("Although pro se pleadings are to be construed liberally, pro se litigants are not excused from compliance with relevant rules of the procedural and substantive law.") Nor does his alleged disability excuse him from complying with a court order.  See, e.g., Hunt v. City of Minneapolis, 203 F.3d 524, 528 (8th Cir. 2000) (affirming trial court's dismissal with prejudice where plaintiff had a persistent pattern of intentional delay and willfully disregarding court orders despite plaintiff's claim that noncompliance was caused by Post Traumatic Stress Disorder).  In any case, Plaintiff's failure to comply with the Court's June 20, 2005 Order appears to be attributable to his unwillingness to cooperate, not to a disability or inability to retain counsel.  Plaintiff was represented by counsel for eight months after the discovery responses Defendants served were due yet the responses provided were wholly inadequate.  Defendants have provided unrebutted evidence that, in other cases, Plaintiff has failed to appear for hearings, disobeyed

multiple court orders, and has not communicated with his counsel of record necessitating their withdrawal. (Doc. No. 33 at 6-7.)

The Court finds that severe prejudice would result from requiring Defendants to defend this case and pursue their counterclaims without the benefit of full discovery. Fletcher v. S. Farm Bureau Life Ins. Co., 757 F.2d 953, 954 (8th Cir. 1985) (per curiam) (affirming dismissal with prejudice of plaintiff's disability benefit claim where an insurer was unable to make a determination of disability because plaintiff refused to have medical tests performed despite court order). In addition, Defendants are prejudiced in having to deal with an incident that happened over seven years in the past, making Plaintiff's claims more and more difficult to evaluate. Garrison v. Int'l Paper Co., 714 F.2d 757, 760 (8th Cir. 1983) (affirming the trial court's dismissal with prejudice for plaintiff's failure to prosecute where the substantive claims related to an event occurring eight to eleven years prior and determining that it was reasonable to conclude that defendant was prejudiced and justice not served by trial of stale claim).

Finally, the Court plainly notified Plaintiff in April 2005 that failure to comply with a court order could result in dismissal of his case for failure to prosecute. (Doc. No. 20 at 3.) And Federal Rule of Civil Procedure 37(b)(2)(C) specifically includes the possibility of dismissal as a sanction for failure to comply with a discovery order.

The Court finds that Plaintiff has intentionally delayed the litigation by failing to cooperate in discovery and has willfully failed to comply with a court order, which merits dismissal with prejudice. Anderson v. Home Ins. Co., 724 F.2d 82, 84 (8th Cir. 1983) (per curiam) (affirming the lower court's dismissal of an action with prejudice due to plaintiff's failure to answer interrogatories four months after their due date and one

month after the court's order requiring a response issued). Therefore, the Court recommends granting Defendants' Motion to Dismiss the Complaint with Prejudice (Doc. No. 32) and denying as moot the remainder of the motions now pending before the Court.

Therefore, based upon the foregoing,

**IT IS HEREBY RECOMMENDED that:**

1. Defendants' Motion to Dismiss the Complaint with Prejudice (Doc. No. 32) be **GRANTED**.

2. Defendants' Motion to Amend/Correct the Scheduling Order (Doc. Nos. 45, 50) be **DENIED as moot**.

3. Plaintiff's Motion for Additional Time to Secure Disability Insurance Attorney (Doc. No. 54) be **DENIED as moot**.


DATED: January 4, 2006

    s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge


Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by <u>January 19, 2006</u>, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.